UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAX TOUHEY,

Plaintiff,

v.

IRON BUILDERS, INC.,

Defendant.

Civil No. 24-12577-LTS

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES AND COSTS (DOC. NO. 70)

August 18, 2026

SOROKIN, J.

## I. BACKGROUND

This was a straightforward case. On October 8, 2024, Max Touhey, a professional photographer, sued Iron Builders, Inc., alleging that Iron Builders posted Touhey's copyrighted photo on its business website without license or permission. For most, if not all, of the lawsuit, Touhey sought only statutory damages of $750 as well as a prayer for fees and costs. Throughout the course of this litigation, Iron Builders did not dispute that Touhey had a valid copyright to the photograph at issue, that a copy of the photograph was displayed on its website, and that it lacked any license or permission to display the photograph. Its only defense was that it had no involvement in its website developer's decision to post Touhey's copyrighted work on the website. See Doc. No. 63-1 at 2-3; Doc. No. 73 at 1-2. On August 7, 2025, Iron Builders filed a crossclaim against its website developer, Bernardo Carneiro. Doc. No. 25. Carneiro was never joined as a party to this action, however, because Iron Builders failed to locate or serve

him. Doc. No. 73 at 7. At no time did Iron Builders request permission for alternative means of service or seek other avenues for pursuing its claims against Carneiro.

The case continued between the two parties. During a scheduling conference on December 11, 2025, the Court established a firm trial date of June 22, 2026. Doc. No. 34. On February 4, 2026, the parties participated in the Court's mediation program but were unable to reach a resolution. Doc. No. 44. Following the mediation, on March 27, 2026, Iron Builders made a settlement offer of $250, which Touhey did not accept. Doc. No. 73-4 at 3-4. Touhey then moved for summary judgment on May 1, 2026. Doc. No. 50. In doing so, he submitted documents spanning five separate entries on the Court's electronic docketing system ("ECF"). Doc. Nos. 50-54. Each filing generated a separate ECF notice to counsel. On May 6, 2026, the Court issued a notice via ECF scheduling a status conference for June 8, 2026. Doc. No. 55. This generated another ECF notice to counsel.

Under Local Rule 56.1, Iron Builders had until May 22 to oppose the summary judgment motion. Iron Builders did not file any opposition by that date, nor did it request additional time to respond. On June 8, 2026, the Court held a status conference with counsel, during which it noted Iron Builders' failure to timely respond to the motion for summary judgment. Doc. No. 58 at 3:16-19. In response, defense counsel stated that he had not known about the motion for summary judgment because he did not receive electronic notice of any of the five separate filings in connection with the motion (despite having had no other issues receiving electronic notices in this matter). Id. at 4:6-16. In the course of the conference, the Court confirmed with defense counsel that his email address listed in ECF was correct, that each of the five ECF notices related to summary judgment went to that address, and that a sixth ECF notice scheduling the conference was issued to the same address within a few days after the motion for summary

judgment. Id. at 4:17-5:18. Counsel conceded he had received the notice for the scheduling conference. Id. at 5:8-18. Neither at the conference nor at any time thereafter has counsel offered any explanation for his "failure" to receive the electronic notices related to summary judgment.

With trial looming on June 22, 2026, the Court instructed defense counsel that if he wished to oppose the motion for summary judgment, he needed to move for leave to file a late opposition with his proposed opposition as an exhibit. Id. at 12:18-25. Later that day, the Court issued an electronic order setting a deadline of June 12 for any such filing. Doc. No. 57. Iron Builders made no such filing at or before this deadline, nor did it seek an extension. On July 14, Touhey filed a notice pointing out Iron Builders' failure to file a motion by the Court's deadline. Doc. No. 62. Approximately five hours after Touhey's filing, Iron Builders filed a motion for leave to file a late opposition without providing any justification for missing the Court's established deadline. Doc. No. 63. Along with the motion, Iron Builders attached its proposed opposition to summary judgment, which contained no response to Touhey's statement of material facts, no citation to a single case, and no evidentiary support besides an unsigned affidavit of Iron Builders' president (at no time since then has Iron Builders filed a signed version of this affidavit). Doc. No. 63-1. The Court denied the motion, finding no good cause for allowing the late opposition. Doc. No. 65.

The Court proceeded to resolve the motion for summary judgment. Upon evaluating the factual record, the Court found that the undisputed facts established Iron Builders' liability for copyright infringement as a matter of law. Id. at 4-6. The Court specifically addressed and rejected Iron Builders' central argument that it could not be held liable for the actions of its website developer. Id. at 5 n.4. The factual record also contained no evidence supporting an

innocent infringement defense, for which Iron Builders bore the burden of proof. See Williams v. Arndt, 626 F. Supp. 571, 581 (D. Mass. 1985). Thus, the Court granted Touhey's motion for summary judgment and awarded damages of $750—the minimum statutory amount. 17 U.S.C. § 504(c)(1).

Shortly thereafter, Iron Builders moved for reconsideration of the Court's summary-judgment decision. Doc. No. 67. In this filing, defense counsel advanced a new explanation for missing his deadline for filing the motion for leave. Counsel claimed that he missed the Court's deadline for filing the motion for leave because his pain medications had interfered with his ability to manage his work responsibilities. Doc. No. 68 at 1-4. The Court declined to accept this as a basis for reconsideration, noting that defense counsel could have raised this issue during the June 8 status conference or in the motion for leave but failed to raise it in either instance. Doc. No. 69 at 2-3. Moreover, nothing in the behavior of counsel during the status conference suggested cognitive impairment. Id. at 2. Additionally, the Court noted that Iron Builders had done nothing to cure the laundry list of deficiencies in its proposed opposition to summary judgment, including that:

> (1) Iron Builders had not submitted a statement disputing the undisputed facts advanced by Touhey (as required by the Local Rules), (2) Iron Builders cited no law supporting any of its positions, (3) the affidavit of Iron Builder's President was [still] unsigned, and (4) the record demonstrated that Iron Builders owned the website containing the copyrighted image, had the ability to stop the display of the image, and had the right and ability to supervise the website developer.

Id. at 3-4. The Court denied the motion for reconsideration. Id. at 4.

Having prevailed on his copyright-infringement claim, Touhey moved for fees and costs on June 25, 2026. Doc. No. 70. Iron Builders opposed the motion, Doc. No. 73, and Touhey replied, Doc. No. 76. Upon obtaining leave to do so, Iron Builders filed a surreply. Doc. No. 80.

## II. DISCUSSION

Touhey seeks fees and costs against Iron Builders under 17 U.S.C. § 505 as well as a separate fee award against Iron Builders' counsel pursuant to 28 U.S.C. § 1927. The Court addresses these requests in turn.

### A. Fees and Costs against Iron Builders

Section 505 of the Copyright Act allows a district court "in its discretion" to "allow the recovery of full costs" and "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. While there is "no precise rule or formula" for determining attorneys' fees under Section 505, district courts must exercise "equitable discretion" in awarding fees. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) (citation modified). In Fogerty, the Supreme Court identified several factors that courts may consider in evaluating whether to award attorneys' fees: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need . . . to advance considerations of compensation and deterrence." Id. at 534 n.19 (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)). However, these factors are not dispositive. Indeed, the First Circuit has read Fogerty as permitting attorneys' fees where the nonprevailing party's claims are "objectively quite weak," even if the claims are not frivolous or pursued in bad faith. Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 108 (1st Cir. 2011).

Here, the objective weaknesses of Iron Builders' position warrant an award of attorneys' fees. Iron Builders' only rebuttal to the copyright-infringement claim was that it was not involved in Carneiro's decision to display Touhey's copyrighted photograph on its business website. But as the Court explained in its order on summary judgment, a corporation can be held vicariously liable for the infringing activity of another. Doc. No. 65 at 5 n.4. Iron Builders' contention that it had no control or ability to control Carneiro's actions—despite its concession

that it hired and retained Carneiro for the purpose of designing its website—defies common sense. To make matters worse, Iron Builders failed to substantiate this theory in any manner. After several unsuccessful attempts to serve Carneiro, Iron Builders abandoned its crossclaim against Carneiro entirely. And, apart from the unsigned affidavit of Iron Builders' president filed with the untimely opposition to summary judgment, Iron Builders did not produce any evidence or create any factual record concerning its relationship with Carneiro. Overall, the hollowness of Iron Builders' sole defense to the copyright-infringement claim warrants an award of attorneys' fees.

Nonetheless, the Court finds that Touhey's requested fee amount of $7,500 is excessive considering the circumstances of this case. As an initial matter, the Court acknowledges that $7,500 is already a significant discount from the total amount of fees Touhey represents he incurred from this litigation ($62,613.50). See Doc. No. 72 ¶ 17. However, this was a simple case involving one claim of copyright infringement. No novel or complicated legal issues arose throughout the litigation. Moreover, discovery was minimal; to the Court's knowledge, Touhey took no depositions during the discovery period. And, Touhey does not explain how he reached $7,500 as the appropriate amount of compensation. These considerations call for a smaller fee award. See Dunn v. Brown, No. 10-cv-11383-FDS, 2012 WL 2500881, at *4 (D. Mass. June 27, 2012) (reducing attorneys' fees in copyright case where "the case presented relatively straightforward legal issues").

Furthermore, a smaller fee award is appropriate given that the other Fogerty factors do not strongly weigh in Touhey's favor. While Iron Builders failed to substantiate its argument that it could not be held liable for Carneiro's copyright infringement, there is no indication that this argument was outright frivolous or advanced in bad faith. Additionally, the need to deter

future instances of copyright infringement is minimal in light of the fact that Iron Builders has taken down its website. And since Iron Builders is a small construction company with presumably limited financial means, a smaller fee award would still serve the deterrence aims of the Copyright Act. Finally, as Touhey concedes, many of Iron Builders' shortcomings throughout the litigation appear to be "attributable to Defense Counsel, rather than to Defendant itself." Doc. No. 71 at 10. Thus, while "a court may order fee-shifting because of a party's litigation misconduct," Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 209 (2016), the equitable considerations in this case weigh against penalizing Iron Builders for the missteps of its counsel.

In light of these considerations, the Court finds that an award of $1,000 in attorneys' fees strikes the appropriate balance. As for costs, the Court finds that Touhey's request for $470, which consists of the $405 filing fee and $65 in process server costs, is reasonable. Accordingly, the Court awards Touhey attorneys' fees of $1,000 and costs of $470 against Iron Builders.[1]

B. Fees Against Defense Counsel

Next, Touhey seeks to recover excess fees of $20,623.50 against defense counsel pursuant to 28 U.S.C. § 1927. Doc. No. 71 at 2. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

[1] In its opposition papers, Iron Builders mentions that it made a Rule 68 offer of $800, which exceeded the amount of damages awarded to Touhey by the Court ($750). Doc. No. 73 at 7-8; Doc. No. 80 at 1-2. To the extent Iron Builders raises this point to invoke Rule 68's cost-shifting provision, it cannot do so. Rule 68 requires that the offer of judgment be made "[a]t least 14 days before the date set for trial." Fed. R. Civ. P. 68(a). Here, Iron Builders provided the offer of $800 on June 14, 2026—a mere eight days before the scheduled trial date. Doc. No. 73-4 at 1-2.

The First Circuit applies an objective standard to assessing whether an attorney acted unreasonably or vexatiously in multiplying proceedings. Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990). Litigation conduct qualifies as "vexatious" if it is "harassing or annoying, regardless of whether it is intended to be so." Id. "Bad faith is not an essential element, but a finding of bad faith is usually a telltale indicium of sanctionable conduct." Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008). Furthermore, Section 1927 attaches liability if the attorney's actions "evince a studied disregard of the need for an orderly judicial process." Id. However, "merely unintended, inadvertent, and negligent acts will not support an imposition of sanctions under section 1927." Cruz, 896 F.2d at 631.

Touhey contends that defense counsel committed several unreasonable and vexatious actions that multiplied the litigation process. These actions include (1) failing to oppose summary judgment by the deadline; (2) presenting a frivolous explanation about not receiving the ECF notifications for the motion for summary judgment; (3) failing to move for leave to file a late opposition by the Court-imposed deadline; (4) filing a motion for reconsideration predicated on an excuse that could have been advanced in the original motion for leave; and (5) ignoring Touhey's numerous attempts to coordinate the submission of the joint pretrial memorandum. Based on these actions, Touhey seeks reimbursement for the fees he incurred to prepare the pretrial memorandum and other trial materials, the notice of Iron Builders' failure to oppose summary judgment, the opposition to the motion for leave, and the reply in support of his motion for summary judgment. See Doc. No. 72-1.

In response, defense counsel contends that his conduct does not reach the high bar for imposing sanctions under Section 1927. Doc. No. 73 at 6. He asserts that he "zealously represented a client with a viable defense," "participated in discovery, filed an answer, filed a

crossclaim, searched relentlessly for a third party, attended mediation, attended all court hearings, not once asked for a delay in proceedings, and answered ready for trial when called." Id. The Court is not convinced. The fact that defense counsel participated in some aspects of the case does not erase the fact that he missed multiple important deadlines, provided unsupported and frivolous explanations for his untimeliness (which bordered on, if not fully were, untruthful statements to the Court), attempted to oppose summary judgment using a tardy brief that contained no legal citations or proper evidentiary support, and further prolonged litigation by filing a motion for reconsideration without addressing any of the deficiencies identified by the Court. These actions certainly do not describe the conduct of an attorney who "zealously represented" his client, id., and go beyond mere negligence or "garden-variety carelessness," Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 245 (1st Cir. 2010).

Additionally, defense counsel did not "answer[] ready for trial when called." Doc. No. 73 at 6. On December 12, 2025, the Court issued an order scheduling various deadlines for pretrial submissions. Doc. No. 36. One of these deadlines pertained to the submission of a joint pretrial memorandum, which was due on June 12, 2026. Id. at 2. When Touhey's counsel reached out to defense counsel about preparing this joint submission to the Court, defense counsel did not respond, forcing Touhey to unilaterally submit his proposed pretrial memorandum on the last possible day. Doc. No. 61.

Now, defense counsel indicates that he did not participate in drafting the joint pretrial memorandum because "it was impossible to provide a meaningful trial memorandum without knowing the nature of the live issues to be tried prior to any ruling on summary judgment." Doc. No. 73 at 8. This explanation, like counsel's other excuses throughout this litigation, makes little sense. It is common for parties to prepare pretrial materials amid evolving

legal issues and pending outcomes. Even if defense counsel believed he could not effectively prepare the trial memorandum due to the pending motion for summary judgment, he could have asked the Court for an extension of the pretrial deadlines. Instead, defense counsel resorted to falling silent to opposing counsel's repeated efforts to confer about the joint memorandum and ignoring the Court's longstanding deadline.

Defense counsel's pattern of flouting deadlines and propounding groundless excuses—all while failing to advance factual and legal arguments on behalf of his client—warrants the imposition of sanctions under Section 1927. With this conclusion, the Court turns to evaluating the appropriate amount of sanctions.

Touhey asks the Court to award excess fees of $20,623.50 based on a total of 31.5 hours billed by his attorneys. In support of this request, he submits a timesheet breaking down the tasks he claims are attributable to defense counsel's sanctionable conduct. Doc. No. 72-1. He also provides an attorney affidavit detailing the experience of the attorneys who worked on the matter. Doc. No. 72.

Although defense counsel fails to challenge the rates, hours, or experience of Touhey's counsel in any manner, several aspects of the timesheet give the Court pause. For one, Touhey's list of sanctionable hours includes time that his counsel spent reviewing Iron Builder's second offer of judgment on June 15, 2026. Doc. No. 72-1 at 1. Touhey does not explain how or why this task (amounting to $200 in fees) was caused by defense counsel's misconduct. Without any such explanation, the Court declines to impose the fees incurred by this task as a sanction on defense counsel.

Furthermore, the Court is not persuaded that all of the time that Touhey's counsel spent on trial preparation is attributable to defense counsel's sanctionable conduct. In a counterfactual

world where Iron Builders filed a timely opposition to the motion for summary judgment, it is highly likely that Touhey would have had to begin trial preparation while awaiting a decision on summary judgment. This is because Touhey filed his motion for summary judgment on May 1, 2026; therefore, the motion would not have been ripe for resolution until late May (at the earliest). Thus, even had defense counsel opposed summary judgment in a timely manner, Touhey's counsel likely would have had to spend some time preparing for trial while awaiting the Court's decision. Similar reasoning applies to the time that Touhey spent preparing the joint pretrial memorandum. Even if defense counsel had fully cooperated with Touhey on this task, Touhey still would have had to spend time preparing his portion of the memorandum. On the other hand, any time that Touhey's attorneys spent drafting the letter to the Court explaining the unilateral submission of the pretrial memorandum (Doc. No. 61) is directly traceable to defense counsel's failure to cooperate on the joint pretrial memorandum. Therefore, Touhey is entitled to the fees affiliated with this task, which amounts to $1,017 based on the Court's review of the timesheet. The Court declines to award any other fees related to trial preparation.

One more issue remains. Touhey's timesheet block bills time spent preparing the opposition to Iron Builders' motion for leave to file a late opposition with time spent drafting the reply in support of the motion for summary judgment. See Doc. No. 72-1 at 1. In light of the fact that Touhey submitted the reply as an attachment to his opposition to the motion for leave, see Doc. No. 64-1, the Court acknowledges that these two tasks were likely done in conjunction. Nonetheless, while Touhey is entitled to fees based on time spent opposing the motion for leave, the Court declines to sanction defense counsel for any time incurred for the summary-judgment reply. Had defense counsel appropriately opposed the motion for summary judgment, Touhey's

counsel would have had to spend time preparing and submitting a reply.[2] Therefore, it would not be reasonable to make defense counsel bear the entire brunt of these fees where Touhey would have incurred some of them in the absence of defense counsel's sanctionable conduct. Accordingly, the Court halves the fees for these block-billed entries.[3] Applying this adjustment, Touhey is entitled to a total of $2,332 for time spent on opposing the motion for leave.

Finally, Touhey is also entitled to $1,611 for time spent filing the notice of Iron Builders' failure to move for leave by the Court's deadline. This brings the total amount of sanctions to $4,960. Considering the circumstances of this case, the Court finds that this is a reasonable amount of excess fees to award Touhey under Section 1927.[4]

## III. CONCLUSION

For the foregoing reasons, Touhey's motion for fees and costs, Doc. No. 70, is ALLOWED IN PART and DENIED IN PART as described in this Memorandum and Order. Iron Builders shall pay Touhey $1,000 in attorneys' fees and $470 in costs, for a total award of $1,470. Separately, defense counsel shall pay Touhey $4,960 in excess attorneys' fees.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[2] Indeed, had defense counsel submitted an opposition actually supported by legal authorities and evidence, Touhey's counsel may have had to spend significantly more time to prepare a reply.

[3] The Court finds that halving the fees for these entries is appropriate because the opposition to the motion for leave and the summary-judgment reply were similar in length and complexity.

[4] As an alternative to Section 1927, Touhey asks the Court to award excess fees under its "inherent authority." Doc. No. 71 at 14-15. It is true that a district court's "implicit powers include the judicial authority to sanction counsel for litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings." United States v. Kouri-Perez, 187 F.3d 1, 7 (1st Cir. 1999). However, in the context of this case, the Court finds that $4,960 is an appropriate sanction to impose on defense counsel and declines to enhance this award by any amount.